KAREN P. HEWITT
United States Attorney
DAVID D. LESHNER
Assistant U.S. Attorney
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7163
David.Leshner@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08-CR-2352-LAB |
|---|---|---|
| Plaintiff, | ) | DATE: August 25, 2008 |
| | ) | TIME: 2:00 p.m. |
| v. | ) | |
| JOVANN ALFREDO ALONSO-PEREZ (4), | ) | **UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:** |
| Defendant. | ) | |
| | ) | **(1) COMPEL DISCOVERY;** |
| | ) | **(2) SUPPRESS EVIDENCE AND STATEMENTS; AND** |
| | ) | **(3) GRANT LEAVE TO FILE FURTHER MOTIONS** |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and David D. Leshner, Assistant United States Attorney, and hereby files its response and opposition to defendant Jovann Alfredo Alonso Perez' motions to compel discovery, dismiss the indictment, suppress evidence and statements and for leave to file further motions. Said response and opposition is based upon the files and records of this case together with the attached memorandum of points and authorities.

///

///

///

# MEMORANDUM OF POINTS AND AUTHORITIES

## I

## STATEMENT OF THE CASE

On July 17, 2008, defendant Jovann Alfredo Alonso-Perez ("Defendant") was arraigned on a one-count Indictment charging him and Aldo Miramontes-Carrillo, Jorge Montes-Leyva and Juan Pedro Sida-Arellano with conspiracy to import marijuana, in violation of 21 U.S.C. §§ 952, 960 and 963. Defendant entered a plea of not guilty.

## II

## STATEMENT OF FACTS

**A.    Recorded Telephone Calls**

On June 30, 2008, a confidential source ("CS") placed a recorded telephone call to defendant Jorge Montes-Leyva. (Declaration of Paul Lewenthal ¶ 2.) In that recorded call, Montes-Leyva agreed to drive a vehicle loaded with drugs from Mexico into the United States that week.[1] (Id.) Montes-Leyva stated that he would be receiving "seven" to cross another vehicle loaded with drugs the next day, and he requested that the CS pay him "eight" to cross the CS's vehicle later in the week. (Id.)

Montes-Leyva expressed to the CS his preference to travel in tandem with a second load vehicle which could take an alternate route to the drop-off location. (Id., ¶ 3.) The CS informed Montes-Leyva that there was not enough money for a second vehicle but that there would be scouts assisting him to import the drugs. (Id.) Montes-Leyva informed the CS that his "copilot" would be the same person who "went with me the last time" and that "Aldo" (defendant Aldo Miramontes-Carrillo) would be willing to serve as a scout for the smuggling venture. (Id.)

Also on June 30, 2008, the CS placed a recorded telephone call to defendant Aldo Miramontes-Carrillo. (Id., ¶ 4.) In that recorded call, Miramontes-Carrillo agreed to act as a scout for Montes-Leyva. Miramontes-Carrillo and the CS discussed that the smuggling venture likely would occur on July 2, 2008 and that Montes-Leyva was familiar with the route he would use to cross the load vehicle

/ / /

---

[1] Montes-Leyva and the CS discussed that the smuggling venture likely would occur on Wednesday, July 2, 2008. The venture actually occurred on the evening of Thursday, July 3, 2008.

into the United States. (Id.) Miramontes-Carrillo stated that he usually received "600" to work as a scout, and he agreed to do so for the same price this time. (Id.)

**B.    Defendants' Apprehension**

On the evening of July 3, 2008, Montes-Leyva was provided a Jeep Cherokee loaded with approximately 971 pounds of marijuana. (Id., ¶ 5.) The CS and an undercover law enforcement agent ("UC") communicated with Montes-Leyva via cellular telephone as he drove the vehicle from Mexico into the United States through the desert east of Calexico, California. (Id.)

As Montes-Leyva entered the United States in the load vehicle, defendant Miramontes-Carrillo was driving his own vehicle in the vicinity to scout for law enforcement. (Id.) Montes-Leyva and Miramontes-Carrillo maintained communication via cellular telephone with each other, the CS and the UC as Montes-Leyva proceeded toward the drop-off location at a Shell Gas Station at the intersection of Highway 111 and Old Highway 80. (Id.) Law enforcement agents also maintained visual surveillance of Montes-Leyva driving the load vehicle and of Miramontes-Carrillo driving the scout vehicle. (Id.)

At approximately 12:30 a.m. on July 4, 2008, law enforcement agents arrested Montes-Leyva and his passenger, defendant Juan Pedro Sida-Arellano upon their arrival at the gas station. (Id., ¶ 6.) Shortly thereafter, agents arrested Miramontes-Carrillo and his passenger, defendant Jovann Alonso-Perez, in the scout vehicle.[2] (Id.)

**C.    Defendants' Post-Arrest Statements**

Each of the four defendants received Miranda warnings and agreed to answer questions.

**1.    Montes-Leyva (load vehicle driver)**

Montes-Leyva admitted to knowingly driving a vehicle containing marijuana from Mexico into the United States. According to Montes-Leyva, he was to be paid $2,000 for importing the marijuana. Montes-Leyva further stated that he had been directed to drop off the vehicle at a gas station within the United States.

///

---

[2] A second passenger in Miramontes-Carrillo's vehicle was determined to be a juvenile and was released to the custody of his parents.

### 2. **Sida-Arellano (load vehicle passenger)**

Sida-Arellano stated that he has known Montes-Leyva for approximately 4 years and that he had asked Montes-Leyva for assistance in entering the United States. Sida-Arellano admitted knowledge of the marijuana in the vehicle but denied that he was to be paid to smuggle the marijuana into the United States. According to Sida-Arellano, Montes-Leyva told him of a $2,000 smuggling fee.

### 3. **Miramontes-Carrillo (scout vehicle driver)**

Miramontes-Carrillo stated that he had been acting as a scout for Montes-Leyva who was smuggling marijuana into the United States. Miramontes-Carrillo further stated that he was to be paid $2,500 for his role in the smuggling venture. According to Miramontes-Carrillo, he was scouting on Highway 98 along the route Montes-Leyva took upon entering the United States. Miramontes-Carrillo admitted to speaking with Montes-Leyva on multiple occasions while the smuggling venture was in progress.

### 4. **Alonso-Perez (scout vehicle passenger)**

Alonso-Perez admitted to assisting Miramontes-Carrillo scout for a vehicle loaded with drugs. According to Alonso-Perez, he and Miramontes-Carrillo were scouting along te route the load vehicle would take upon entering the United States. Alonso-Perez and Miramontes-Carrillo were en route to meet Montes-Leyva at a gas station when they were arrested. Alonso-Perez further stated that Miramontes-Carrillo was going to pay him for his assistance in the venture.

## III

## DEFENDANT'S MOTIONS

**A.   Motion For Discovery And To Preserve Evidence**

The Government will continue to fully comply with its discovery obligations. To date, the Government has provided Defendant with written discovery and CDs, including reports of his arrest, his post-arrest statement, his rap sheet and recorded conversations between Defendant and the CS.

In an attempt at simplification, this memorandum will address two specific areas of discovery: (1) items which the Government either has provided or will voluntarily provide and (2) items demanded and discussed by Defendant which go beyond the strictures of Rule 16 and are not discoverable.

///

**1. Items which the Government has provided or will voluntarily provide.**

    a.    The Government will disclose to Defendant and make available for inspection, copying or photographing: any relevant written or recorded statements made by Defendant, or copies thereof, within the possession, custody, or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the Government; and that portion of any written record containing the substance of any relevant oral statement made by Defendant whether before or after arrest in response to interrogation by any person then known to Defendant to be a Government agent. The Government also will disclose to Defendant the substance of any other relevant oral statement made by Defendant whether before or after arrest in response to interrogation by any person then known by Defendant to be a Government agent if the Government intends to use that statement at trial.

    b.    The Government will permit Defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the Government, and which are material to the preparation of Defendant's defense or are intended for use by the Government as evidence during its case-in-chief at trial, or were obtained from or belong to Defendant;[3]

    c.    The Government will permit Defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are in the possession, custody or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the Government, and which are material to the preparation of his defense or are intended for use by the Government as evidence during its case-in-chief at trial;[4]

///

///

---

[3] Rule 16(a)(1)(C) authorizes defendants to examine only those Government documents material to the preparation of their defense against the Government's case-in-chief. United States v. Armstrong, 517 U.S. 456, 463 (1996). Rule 16 does not require the disclosure by the prosecution of evidence it intends to use in rebuttal. United States v. Givens, 767 F.2d 574, 583 (9th Cir. 1984).

[4] The Government need not "disclose every single piece of paper that is generated internally in conjunction with scientific tests." United States v. Iglesias, 881 F.2d 1519, 1524 (9th Cir. 1989).

    d.  The Government has furnished to Defendant a copy of his prior criminal record, which is within its possession, custody or control, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the Government;

    e.  The Government will disclose the terms of all agreements (or any other inducements) with cooperating witnesses, if any are entered into;

    f.  The Government may disclose the statements of witnesses to be called in its case-in-chief when its trial memorandum is filed;[5]

    g.  The Government will disclose any record of prior criminal convictions that could be used to impeach a Government witness prior to any such witness' testimony;

    h.  The Government will disclose in advance of trial the general nature of other crimes, wrongs, or acts of Defendant that it intends to introduce at trial pursuant to Rule 404(b) of the Federal Rules of Evidence;

    i.  The Government acknowledges and recognizes its continuing obligation to disclose exculpatory evidence and discovery as required by Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), the Jencks Act and Rules 12 and 16 of the Federal Rules of Criminal Procedure, and will abide by their dictates.[6]

///

///

---

[5] Production of these statements is governed by the Jencks Act and need occur only after the witness testifies on direct examination. United States v. Mills, 641 F.2d 785, 789-790 (9th Cir. 1981); United States v. Dreitzler, 577 F.2d 539, 553 (9th Cir. 1978). For Jencks Act purposes, the Government has no obligation to provide the defense with statements in the possession of a state agency. United States v. Durham, 941 F.2d 858, 861 (9th Cir. 1991). Prior trial testimony does not fall within the scope of the Jencks Act. United States v. Isigro, 974 F.2d 1091, 1095 (9th Cir. 1992). Further, an agent's recorded radio transmissions made during surveillance are not discoverable under the Jencks Act. United States v. Bobadilla-Lopez, 954 F.2d 519, 522-23 (9th Cir. 1992). The Government will provide the grand jury transcripts of witnesses who have testified before the grand jury if said testimony relates to the subject matter of their trial testimony. Finally, the Government reserves the right to withhold the statement of any particular witness it deems necessary until after the witness testifies.

[6] Brady requires the Government to produce all evidence that is material to either guilt or punishment. The Government's failure to provide the information required by Brady is constitutional error only if the information is material, that is, only if there is a reasonable probability that the result of the proceeding would have been different had the information been disclosed. Kyles v. Whitley, 514 U.S. 419 (1995). However, neither Brady nor Rule 16 require the Government to disclose inculpatory information to the defense. United States v. Arias-Villanueva, 998 F.2d 1491 (9th Cir. 1993).

**2.    Items which go beyond the strictures of Rule 16**

    **a.    Defendant's requests for specific Brady information or general Rule 16 discovery.**

Defendant requests that the Government disclose all evidence "favorable to Mr. Alonso-Perez on the issue of guilt and/or which affects the credibility of the government's case." (Motion at 3.)

It is well-settled that prior to trial, the Government must provide a defendant in a criminal case with evidence that is both favorable to the accused and material to guilt or punishment. Pennsylvania v. Richie, 480 U.S. 39, 57 (1987); United States v. Agurs, 427 U.S. 97 (1976); Brady v. Maryland, 373 U.S. 83, 87 (1963). As the Supreme Court has explained, "a fair analysis of the holding in Brady indicates that implicit in the requirement of materiality is a concern that the suppressed evidence may have affected the outcome of the trial." Agurs, 427 U.S. at 104. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985) (emphasis added). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Richie, 480 U.S. at 57 (citation omitted).

The Supreme Court has repeatedly held that the Brady rule is not a rule of discovery; rather, it is a rule of fairness and is based upon the requirement of due process. Bagley, 473 U.S. at 675, n. 6. The Supreme Court's analysis of the limited scope and purpose of the Brady rule, as set forth in the Bagley opinion, is worth quoting at length:

> Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur. [footnote omitted]. Thus, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial: For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose . . . but to reiterate a critical point, the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient

1  significance to result in the denial of the defendant's right to a fair trial.

2  Id. at 675 (emphasis added, citation omitted).

### b.  Disclosure of witness information

Defendant seeks numerous records and information pertaining to potential Government witnesses. Regarding these individuals, the Government will provide Defendant with the following items prior to any such individual's trial testimony:

(1)  The terms of all agreements (or any other inducements) it has made with cooperating witnesses, if they are entered into;

(2)  All relevant exculpatory evidence concerning the credibility or bias of Government witnesses as mandated by law; and,

(3)  Any record of prior criminal convictions that could be used to impeach a Government witness.

The Government opposes disclosure of rap sheet information of any Government witness prior to trial. See United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). Furthermore, any uncharged prior misconduct attributable to Government witnesses, all promises made to and consideration given to witnesses by the Government, and all threats of prosecution made to witnesses by the Government will be disclosed if required by Brady and Giglio.

### c.  Agents' rough notes

Although the Government has no objection to the preservation of agents' handwritten notes, the Government objects to their production at this time. If during any evidentiary proceeding, certain rough notes become relevant, these notes will be made available.

Prior production of these notes is not necessary because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980); United States v. Kaiser, 660 F.2d 724, 731-32 (9th Cir. 1981).

/ / /

/ / /

/ / /

### d.    **Government reports, summaries and memoranda**

Rule 16 provides, in relevant part:

[T]his rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or other government agent in connection with the investigating or prosecuting of the case.

Rule 16(a)(2). This subsection exempts from disclosure documents prepared by government attorneys and agents that would otherwise be discoverable under Rule 16. United States v. Fort, 472 F.3d 1106, 1110 & n.2 (9th Cir. 2007).

As expressed previously, the Government recognizes its obligations pursuant to Brady, Giglio, Rule 16, and the Jencks Act.[7] But the Government shall not turn over internal memoranda or reports which are properly regarded as work product exempted from pretrial disclosure.[8] Such disclosure is supported neither by the Rules of Evidence nor case law and could compromise other areas of investigation still being pursued.

Notwithstanding Rule 16(a)(2), the Government has produced the reports pertaining to Defendant's apprehension.

### e.    **Addresses and phone numbers of Government witnesses**

Defendant requests the name and last known address and phone of each prospective Government witness. While the Government may supply a tentative witness list with its trial memorandum, it objects to providing home addresses and telephone numbers. See United States v. Sukumolachan, 610 F.2d 685, 688 (9th Cir. 1980); United States v. Conder, 423 F.2d 904, 910 (9th Cir. 1970) (addressing defendant's request for the addresses of actual Government witnesses).

### f.    **Personnel files of federal agents**

Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and United States v. Cadet, 727 F.2d 1453 (9th Cir. 1984), the Government agrees to review the personnel files of its federal law enforcement witnesses and to "disclose information favorable to the defense that meets the appropriate standard of materiality . . . ." Cadet, 727 F.2d at 1467-68. Further, if counsel for the United States is

---

[7] Summaries of witness interviews conducted by Government agents are not Jencks Act statements. United States v. Claiborne, 765 F.2d 784, 801 (9th Cir. 1985).

[8] The Government recognizes that the possibility remains that some of these documents may become discoverable during the course of the trial if they are material to any issue that is raised.

1  uncertain about the materiality of the information within its possession, the material will be submitted
2  to the court for in-camera inspection and review. In this case, the Government will ask the affected law
3  enforcement agency to conduct the reviews and report their findings to the prosecutor assigned to the
4  case.

5  In <u>United States v. Jennings</u>, 960 F.2d 1488 (9th Cir. 1992), the Ninth Circuit held that the
6  Assistant U.S. Attorney assigned to the prosecution of the case has no duty to <u>personally</u> review the
7  personnel files of federal law enforcement witnesses. In <u>Jennings</u>, the Ninth Circuit found that the
8  present Department of Justice procedures providing for a review of federal law enforcement witness
9  personnel files by the agency maintaining them is sufficient compliance with <u>Henthorn</u>. <u>Id</u>. In this case,
10 the Government will comply with the procedures as set forth in <u>Jennings</u>.

11 Finally, the Government has no duty to examine the personnel files of state and local officers
12 because they are not within the possession, custody or control of the Federal Government. <u>United States</u>
13 <u>v. Dominguez-Villa</u>, 954 F.2d 562 (9th Cir. 1992).

**g.    Reports of witness interviews**

15 To date, the Government does not have any reports regarding witness interviews or otherwise
16 that have not been turned over to Defendant. However, to the extent that such additional reports
17 regarding witness interviews are generated, the information sought by Defendant is not subject to
18 discovery under the Jencks Act, 18 U.S.C. § 3500.

19 Reports generated in connection with a witness's interview session are only subject to production
20 under the Jencks Act if the witness signed the report or otherwise adopted or approved the contents of
21 the report. <u>See</u> 18 U.S.C. § 3500(e)(1); <u>United States v. Miller</u>, 771 F.2d 1219, 1231-31 (9th Cir. 1985)
22 ("The Jencks Act is, by its terms, applicable only to writings which are signed or adopted by a witness
23 and to accounts which are substantially verbatim recitals of a witness' oral statements."); <u>United States</u>
24 <u>v. Friedman</u>, 593 F.2d 109, 120 (9th Cir. 1979) (interview report containing a summary of a witness'
25 statements is not subject to discovery under the Jencks Act); <u>United States v. Augenblick</u>, 393 U.S. 248,
26 354 (1969) (rough notes of witness interview not a "statement" covering entire interview). Indeed,
27 "both the history of the [Jencks Act] and the decisions interpreting it have stressed that for production
28 to be required, the material should not only reflect the witness' own words, but should also be in the

nature of a complete recital that eliminates the possibility of portions being selected out of context." United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992).

### h. Expert witnesses

The Government will disclose to Defendant the name, qualifications, and a written summary of testimony of any expert the Government intends to use during its case-in-chief at trial pursuant to Fed. R. Evid. 702, 703, or 705 three weeks prior to the scheduled trial date.

### i. Other discovery requests

To the extent that the above does not answer all of Defendant's discovery requests, the Government opposes the motion on the grounds that there is no authority requiring the production of such material.

## B. Motion To Suppress

### 1. Probable cause existed to arrest defendant

"Police may arrest a person without a warrant if the arrest is supported by probable cause." United States v. Buckner, 179 F.3d 834, 837 (9th Cir. 1999). "Probable cause exists when, under the totality of the circumstances known to arresting officers, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime." Id. (citation omitted); United States v. Carranza, 289 F.3d 634, 640 (9th Cir. 2002) (same).

As set forth in the Declaration of Paul Lewenthal, law enforcement agents had probable cause to arrest Miramontes-Carrillo based on (1) the recorded telephone calls on June 30, 2008; (2) the UC's communications with Defendant as he drove the scout vehicle; and (3) visual surveillance of Defendant as he scouted along the route taken by Montes-Leyva in the load vehicle. (Lewenthal Declaration, ¶¶ 2-6.) Defendant was a passenger in Miramontes-Carrillo's vehicle during the entirety of the smuggling venture, and there existed a "fair probability" that Defendant was engaged in criminal activity with Miramontes-Carrillo. Accordingly, probable cause existed to arrest Defendant, and there was no Fourth Amendment violation.

///

///

///

### 2. Defendant is not entitled to an evidentiary hearing

"An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) (citation omitted). Local Criminal Rule 47.1(g)(1) provides, in relevant part:

> Criminal motions requiring predicate factual findings shall be supported by declaration(s) . . . . The Court need not grant an evidentiary hearing where either party fails to properly support its motion or opposition.

A District Court may properly deny a request for an evidentiary hearing on a motion to suppress evidence where the defendant does not submit a declaration pursuant to a local rule. United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991). See also United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer. In these circumstances, the district court was not required to hold an evidentiary hearing."); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (boilerplate motion containing indefinite and unsworn allegations held insufficient to require evidentiary hearing on defendant's motion to suppress statements).[9]

Here, Defendant's election not to submit a declaration is a plain violation of Local Rule 47.1(g). Further, the absence of a declaration prevents this Court from making a finding that disputed issues of fact exist in the first instance. Howell, 231 F.3d at 620. As such, the Court should deny Defendant's motion without an evidentiary hearing. Batiste, 868 F.2d at 1092 (Government proffer alone is adequate to defeat a motion to suppress where the defense fails to adduce specific and material disputed facts).

### 3. Defendant's statements are admissible

A statement made in response to custodial interrogation is admissible under Miranda v. Arizona, 384 U.S. 437 (1966) and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the statement was made after an advisement of rights and was not elicited by improper coercion. See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs

---

[9] No rights are infringed by the requirement of such a declaration because the United States may not use the declaration at trial over the defendant's objection. Batiste, 868 F.2d at 1092.

voluntariness and Miranda determinations; valid waiver of Miranda rights should be found in the "absence of police overreaching"). Although the totality of circumstances, including characteristics of the defendant and details of the interview, should be considered, improper coercive activity must occur for suppression of any statement. See id. (noting that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"); cf. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973) ("Some of the factors taken into account have included the youth of the accused; his lack of education, or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep.") (citations omitted). While it is possible for a defendant to be in such a poor mental or physical condition that he cannot rationally waive his rights (and misconduct can be inferred based on police knowledge of such condition, Connelly, 479 U.S. at 167-68), the condition must be so severe that the defendant was rendered utterly incapable of rational choice. See United States v. Kelley, 953 F.2d 562, 564 (9th Cir.1992) (collecting cases rejecting claims of physical/mental impairment as insufficient to prevent exercise of rational choice).

Here, the undisputed facts demonstrate that Defendant knowingly and voluntarily waived his Miranda rights. Defendant was arrested at approximately 12:30 a.m. on July 4, 2008. He was advised of his Miranda rights within six hours of his arrest. Defendant acknowledged that he understood his rights, and he agreed to answer questions without the presence of an attorney. Simply put, law enforcement agents complied with Miranda, and Defendant fails to allege with any specificity that either the Miranda advisal or his ensuing waiver was improper.

The totality of circumstances further demonstrates that Defendant's post-arrest statements were voluntary. As noted above, Defendant has not submitted a declaration, and there is no evidence before the Court that he was subjected to coercive police activity. See, e.g., Clark v. Murphy, 331 F.3d 1062, 1073 (9th Cir. 2003) (upholding admission of statements where defendant was questioned over a five-hour period in a small room without toilet or water facilities). Even assuming the truth of the facts proffered in Defendant's motion – that he is a young, Mexican citizen and was held "incommunicado" for a period of hours prior to making his post-arrest statement – those facts do not demonstrate coercive police activity. Based on the Government's proffer, the Court can conclude by a preponderance of the

evidence that Defendant knowingly and voluntarily waived his <u>Miranda</u> rights and that his subsequent statements were made voluntarily.

**C.    Motion For Leave To File Further Motions**

The Government does not oppose granting leave to bring further motions so long as those motions are based on evidence (if any) not yet produced in discovery.

**IV**

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court rule on Defendant's motions as set forth above.

DATED:    August 18, 2008.            Respectfully submitted,

Karen P. Hewitt
United States Attorney

s/ David D. Leshner
DAVID D. LESHNER
Assistant U.S. Attorney

|   |   |   |
|---|---|---|
| 1 | UNITED STATES DISTRICT COURT | |
| 2 | SOUTHERN DISTRICT OF CALIFORNIA | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08-CR-2352-LAB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CERTIFICATE OF SERVICE |
| JOVANN ALFREDO ALONSO-PEREZ (4), | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, DAVID D. LESHNER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANTS' MOTIONS TO: (1)   C O M P E L DISCOVERY; (2) SUPPRESS EVIDENCE AND STATEMENTS; AND (3) GRANT LEAVE TO FILE FURTHER MOTIONS** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Victor Torres, Esq.

Howard Frank, Esq.

Andrew Lah, Esq.

Lynn Ball, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 18, 2008.

    /s/ David D. Leshner
DAVID D. LESHNER

1  KAREN P. HEWITT
   United States Attorney
2  DAVID D. LESHNER
   Assistant U.S. Attorney
3  Federal Office Building
   880 Front Street, Room 6293
4  San Diego, California 92101-8893
   Telephone: (619) 557-7163
5  David.Leshner@usdoj.gov

6  Attorneys for Plaintiff
   United States of America

7

8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10 UNITED STATES OF AMERICA,          )   Criminal Case No. 08-CR-2352-LAB
                                      )
11              Plaintiff,            )   DATE:   August 25, 2008
                                      )   TIME:   2:00 p.m.
12       v.                           )
                                      )
13 ALDO MIRAMONTES-CARRILLO (3),      )   DECLARATION OF ICE SPECIAL AGENT
   JOVANN ALONSO-PEREZ (4),           )   PAUL LEWENTHAL
14                                    )
                Defendants.           )
15 _____)

16       I, Special Agent Paul Lewenthal, declare:

17       1.    I am a Special Agent with Immigration and Customs Enforcement and have been so

18 employed since 2003. I currently am assigned to the Border Enforcement Security Task Force. Prior

19 to joining ICE, I was a Border Patrol Agent from 1992 to 2003. This declaration is based upon facts

20 personally known to me as well as facts made known to me by other law enforcement officers.

21       2.    On June 30, 2008, a confidential source ("CS") placed a recorded telephone call to

22 defendant Jorge Montes-Leyva, also known as "Jorgillo." In that recorded call, Montes-Leyva agreed

23 to drive a vehicle loaded with drugs from Mexico into the United States later that week. Montes-Leyva

24 stated that he would be receiving "seven" to cross another vehicle loaded with drugs the next day, and

25 he requested that the CS pay him "eight" to cross the vehicle for the CS later in the week.

26       3.    In the recorded call, Montes-Leyva expressed to the CS his preference to travel in tandem

27 with a second load vehicle which could take an alternate route to the drop-off location. The CS

28 informed Montes-Leyva that there was not enough money for a second vehicle but that there would be

1  scouts assisting him to import the drugs. Montes-Leyva informed the CS that his "copilot" would be
2  the same person who "went with me the last time" and that "Aldo" (defendant Aldo Miramontes-
3  Carrillo) would be willing to serve as a scout for the smuggling venture.

4       4.   Also on June 30, 2008, the CS placed a recorded telephone call to defendant Aldo
5  Miramontes-Carrillo. In that recorded call, Miramontes-Carrillo agreed to act as a scout (commonly
6  referred to as "checking") for Montes-Leyva. Miramontes-Carrillo and the CS discussed that the
7  smuggling venture likely would occur on July 2, 2008 and that Montes-Leyva was familiar with the route
8  he would use to cross the load vehicle into the United States. Miramontes-Carrillo stated that he usually
9  received "600" to work as a scout, and he agreed to act as a scout in this smuggling venture for the same
10 fee.

11      5.   On the evening of July 3, 2008, Montes-Leyva was provided a Jeep Cherokee loaded with
12 approximately 971 pounds of marijuana. The CS and an undercover law enforcement agent ("UC")
13 communicated with Montes-Leyva via cellular telephone as he drove the vehicle from Mexico into the
14 United States through the desert east of Calexico, California. As Montes-Leyva entered the United
15 States in the load vehicle, defendant Miramontes-Carrillo drove his own vehicle in the vicinity to scout
16 for law enforcement. Montes-Leyva and Miramontes-Carrillo maintained communication via cellular
17 telephone with each other, the CS and the UC as Montes-Leyva proceeded toward the drop-off location,
18 a Shell gas station at the intersection of Highway 111 and Old Highway 80. Law enforcement agents
19 also maintained visual surveillance of Montes-Leyva driving the load vehicle and of Miramontes-
20 Carrillo driving the scout vehicle.

21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

6. At approximately 12:30 a.m. on July 4, 2008, law enforcement agents arrested Montes-Leyva and his passenger, defendant Juan Pedro Sida-Arellano, upon their arrival at the gas station. Shortly thereafter, agents arrested Miramontes-Carrillo and his passenger, defendant Jovann Alonso-Perez, in the scout vehicle. A second passenger in Miramontes-Carrillo's vehicle was determined to be a juvenile and was released to the custody of his parents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

August 18, 2008

Paul Lowenthal
Special Agent
Immigration and Customs Enforcement